UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

    Plaintiff,

vs.

Case No. 15-20283
HON. GEORGE CARAM STEEH

RODNEY KNIGHT (D-4),

    Defendant.
_____/

## OPINION AND ORDER DENYING
## DEFENDANT KNIGHT'S MOTION TO SUPPRESS (DOC. 251)

Defendant Rodney Knight is charged with conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, and being a felon in possession of a firearm in violation of 19 U.S.C. § 922(g). This matter is presently before the Court on Knight's Motion to Suppress Evidence. (Doc. 251). Oral argument was held on November 13, 2017. For the reasons stated below, Knight's motion is DENIED.

## I. Background

Zigmond allegedly led a prescription drug trafficking scheme, wherein marketers or recruiters arranged for individuals to enter Zigmond's chiropractic office as patients. (Doc. 251-2 at PageID 1941-44). The

marketers made a cash payment of about $500.00 for each patient. (Doc. 251-2 at PageID 1942). Zigmond referred patients to doctors participating in the scheme. (Doc. 251-2 at PageID 1941-42). Patients visited these physicians at other locations and, without an adequate examination or medical need, received a prescription for a controlled substance; typically Oxycodone or Roxicodone. (Doc. 251-2 at PageID 1941-44).

Knight was identified as Zigmond's "muscle;" providing protection and transportation. (Doc. 251-2 at PageID 1943). Zigmond's former driver and "money-man," Vladimir Zvynka, was killed during a robbery outside Zigmond's office. (*Id.*). Knight also allegedly "often operate[d]" as Zigmond's "second-in-command;" assisting in "scheduling appointments and accepting payments from marketers/recruiters." (Doc. 251-2 at PageID 1947-49).

The Government conducted a Title III wire and electronic intercept on a telephone utilized by Knight between November 6, 2014 and December 5, 2014. (Doc. 251-2 at PageID 1949). On November 18, 2014, agents intercepted calls between Knight and a marketer/recruiter regarding a request to pay for 34 doctor's appointments. (Doc. 251-2 at PageID 1949). Thirty appointments, at $500 each, cost approximately $15,000. (Doc. 251-2 at PageID 1950). On November 19, 2014, agents observed Knight meet

at the location and time stated in the intercepted call. (*Id.*). Within the hour, agents stopped Knight and seized $15,000 in cash from his vehicle. (*Id.*).

On April 28, 2015, the Government filed a search warrant application and 62 page affidavit for Knight's home and eight other locations. (Doc. 251-2). Based on his knowledge of the case, court authorized intercepted phone calls, and personal observations, the affiant, Drug Enforcement Administration Agent Mark Gogan, stated that Knight was a complicit member in Zigmond's organization, Zigmond's close associate, and his main patient marketer. (Doc. 251-2 at PageID 1960). Knight allegedly possessed a deep understanding and working knowledge of the day to day operation. (*Id.*). The affidavit stated that, given the $15,000 seized on November 19, 2014, Knight was known to carry large sums of drug trafficking proceeds. It also relied on information provided by two confidential informants to assert that Knight was "intimately involved with the scheduling of appointments to obtain fraudulent prescriptions." (*Id.*).

The warrant application sought to search Knight's home "for evidence of his involvement in this enterprise, including evidence of his relationship with Zigmond and other associates; evidence of his financial transactions with Zigmond and his associates; evidence of firearms, ammunition or other weapons likely to be present to safeguard the drug proceeds carried

by Knight, evidence of his own financial transactions involving his payments and profits from the enterprise, and evidence of drugs, prescriptions and patient records related to the enterprise." (Doc. 251-2 at PageID 1960-61). An attachment to the affidavit further clarified the evidence sought, including:

- All records relating to the ordering, maintenance, or dispensing of controlled substances;
- Documentation of all patient appointments or scheduling and patient sign-in sheets;
- All records related to any payments received from marketers or recruiters;
- All documents constituting, concerning or relating to work and personal diaries, calendars, logs, appointment books and schedules;
- All documents relating to the seizure of $15,100,
- All evidence of communication;
- All business and personal financial information relative to Knight;
- Computers and telephones;
- Controlled substances;
- United States currency; and
- Firearms and ammunition.

(Doc. 251-2 at PageID 1922-24).

## II. Legal Standard

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation. . . ."  U.S. CONST. amend.

IV. The issuing magistrate must simply "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Sixth Circuit sets forth certain criteria to guide this decision. *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). "First, the affidavit or warrant request must state a nexus between the place to be searched and the evidence sought." *Id.* (internal quotation omitted). "Second, the belief that the items sought will be found at the location to be searched must be supported by less than prima facie proof but more than mere suspicion." *Id.* (internal quotations omitted). The magistrate "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense." *Id.*

"[T]he duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (internal quotation marks and alterations omitted). A magistrate's determination of probable cause is given "great deference" and reversed only "if the magistrate arbitrarily exercised his or her authority." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013).

## III. Analysis

**A. The Warrant States a Nexus Between the Place to be Searched and the Evidence Sought**

The Sixth Circuit analyzed the nexus requirement in *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016). The court acknowledged its prior statement that "in the case of drug dealers, evidence is likely to be found where the dealers live." *Id*. at 383 (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)). It noted that, "in some cases, we have permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence had been observed directly." *Id.* But stated that "[w]e have never held [ ] that a suspect's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Id*. (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 1998)). The Court clarified that it "required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is . . . facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id.* The court ruled that "if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in

the defendant's home – even if the defendant is a known drug dealer." *Id.* at 384.

Knight relies on *Brown* to argue that this search was invalid because the affidavit failed to specify information connecting his home with the suspected prescription fraud ring. Knight asserts that there was no evidence that his home had a functioning role in the prescription fraud ring because his trash was not searched, agents did not observe him conducting deals or deliveries at this address, and no agent asserted that his home was used as a base. He concludes that the affidavit improperly relies on agents' training and experience to infer that, because he was suspected of a crime, evidence would be found in his home.

Defendant's argument fails. *Brown* is distinguishable. This affidavit did not attempt to establish probable cause to believe Knight was conducting prescription drug deals at his home. Instead, it attempted to establish probable cause to believe that tools used in the prescription fraud ring, like cellphones, firearms, and scheduling records, would be found in Knight's home.

The affidavit sufficiently established a nexus between Knight's home and the evidence sought. It reviewed evidence, including informant statements and intercepted wiretap calls, illustrating that Knight used a

cellphone to facilitate the alleged prescription drug trafficking offenses. The affiant stated that, in his experience, cellphones used in drug trafficking offenses contained information on customers and criminal associates and are often stored in locations providing frequent, ready access. It was reasonable to expect Knight's phone to be with him, and for Knight to be in his home, when the warrant was executed at 7:50am while Knight's car was observed outside his residence. The affidavit also reviewed Knight's role as Zigmond's driver and "muscle," as well as the murder of Zigmond's former driver. It is reasonable to believe, that under these circumstances, Knight would possess weapons and store them at his home when he was not working. Finally, the affidavit recounted evidence that Knight scheduled patient appointments and collected cash payments. "One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). Knight's home is a reasonable location for these business records given that intercepted cellphone calls suggest that Knight assisted in scheduling appointments and his work was not limited to the four walls of Zigmond's office.

**B. There is No Basis for a *Franks* Hearing**

"In the case of alleged material omissions – by analogy to the standard for included false statements - the defendant is entitled to a [*Franks*] hearing if and only if: (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (emphasis omitted).

Defendant asserts that the affiant omitted facts that illustrate there is no connection between Knight's home and the alleged criminal activity. These facts include:

- The $15,000 in cash seized on November 19, 2014 was to be delivered to Zigmond, not kept by Knight;
- Zigmond claimed ownership of this cash; and
- Agents surveilled Knight and did not report observing him move anything to or from his home.

Knight's request for a *Franks* hearing is denied. Knight has not made any preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth. Further, this information does not constitute a material omission. The affidavit does not claim that Zigmond's money was stored at Knight's home. It merely states probable cause to search for

evidence of Knight's own profits from the alleged enterprise. The allegedly omitted facts do not undermine a finding of probable cause to search Knight's home for his own profits.

## C. The Exclusionary Rule Does Not Apply

For the reasons stated above, the Court concludes that there was probable cause to search Knight's home. The search was valid. As such, there is no poisonous tree and the exclusionary rule does not apply to suppress evidence found in Knight's home or his statements.

## IV. Conclusion

For the reasons stated above, defendants' motion is DENIED.

IT IS SO ORDERED.

Dated: November 15, 2017

s/George Caram Steeh<br>
GEORGE CARAM STEEH<br>
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 15, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---