UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                           Case No. 15-20283

v.

                           Hon. George Caram Steeh

D-4 RODNEY KNIGHT,

       Defendant.

_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE (ECF No. 409)

       Defendant Rodney Knight moves for compassionate release due to

the risks presented by an outbreak of COVID-19 at the facility where he is

housed.  For the reasons explained below, Defendant's motion is denied.

BACKGROUND FACTS

       Defendant pleaded guilty to conspiracy to distribute controlled

substances and to possessing a firearm as a convicted felon.  Specifically,

Knight was involved in a "pill mill" scheme, in which drug-seeking patients

were given medically unnecessary oxycodone prescriptions in exchange for

cash.  Knight assisted in recruiting patients and coordinating their

appointments.  He admitted to being responsible for the distribution of

125,000 dosage units of oxycodone.  The conspiracy was led by Boris

Zigmond, for whom Knight worked for seven years.  Zigmond also identified Knight as a participant in another scheme, in which they staged fake auto accidents in order to defraud insurance companies.

In 2016, Knight was acquitted of serving as the driver of a getaway car after a non-fatal shooting.  Subsequently, he was found to be in possession of an AK-47, which served as the basis for the firearm charge in this case.  Although Knight's criminal history made him eligible for a "safety valve" guidelines reduction, he declined to participate in the required debriefing with federal agents.

On August 15, 2018, the court sentenced Knight to a term of 75 months of imprisonment.  He began serving his sentence on October 15, 2018; his projected release date is March 13, 2024.

Defendant is currently housed at FCI Elton, a minimum-security facility in Ohio.  Due to a lack of virus testing, as well as the dormitory-style living conditions that do not allow for appropriate social distancing inside the prison, COVID-19 has posed a significant threat to the health and safety of inmates and prison staff at Elton.  Hundreds of inmates have been infected and nine have died.  *See* https://www.bop.gov/coronavirus/ (last accessed June 8, 2020).  The situation at FCI Elton is at the root of a putative class action lawsuit brought by the ACLU on behalf of inmates with

conditions that put them at increased risk of complications or death if they contract COVID-19.  That lawsuit seeks to have categories of inmates receive expedited consideration and immediate transfer from the physical confines of Elkton.  *Wilson v. Williams,* Case No. 4:20-cv-00794 (N.D. Ohio).  Although the district court granted an injunction requiring the warden to consider prisoners for transfer to other facilities, and the Sixth Circuit denied a stay, the U.S. Supreme Court recently granted a stay of the district court's order pending appeal.  *Id.* at ECF No. 111.

Following directives from the Attorney General, the Bureau of Prisons ("BOP") is assessing its entire prison population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement. 03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP.  This process necessarily requires the BOP to identify the best candidates for release, ensure that their homes are suitable for home confinement, and arrange a way to quarantine each of them for 14 days.  As of June 8, 2020, these directives have resulted in at least 3,883 inmates being placed in home confinement. *See* https://www.bop.gov/coronavirus/ (last accessed June 8, 2020).  After considering Defendant's request, the BOP determined that he was not eligible for home confinement.

LAW AND ANALYSIS

I.  Legal Standard

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  The court's authority to grant Defendant's request for compassionate release is governed by 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  This section allows for judicial modification of an imposed term of imprisonment when three criteria have been met: (1) the defendant has first exhausted all administrative remedies with the BOP or at least allowed the BOP 30 days to act on his request before seeking compassionate release on their own motion;  (2) extraordinary and compelling reasons warrant such a reduction; and (3) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission and the court has considered the factors set forth in section 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

An "extraordinary and compelling reason" for the reduction can be satisfied in cases where a defendant's medical conditions or overall state of health are such that they cannot be treated effectively or will worsen in a custodial environment.  To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that

-4-

satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

Even if these criteria are met, the court may not grant a motion for compassionate release unless the factors set forth in § 3553 support a sentence reduction.  *See* 18 U.S.C. § 3553(a); *United States v. Kincaid*, 802 Fed. Appx. 187 (6th Cir. 2020) (affirming denial of compassionate release motion when district court found that § 3553 factors did not weigh in favor of sentence reduction).  These factors include the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment, general and specific deterrence, and the protection of the public.  18 U.S.C. § 3553(a).

II.   Exhaustion of Administrative Remedies

Until recently, only the BOP could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for compassionate release themselves.  First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).  The provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id*.  If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing

the administrative process within the BOP or waiting 30 days from when the

warden at the facility received the request. 18 U.S.C. § 3582(c)(1)(A).

Defendant's counsel sent a letter to the warden inquiring about home

confinement for Knight on May 1, 2020.  The warden responded on May 4,

2020, indicating that he does not consider Knight to be eligible for a home

confinement placement.  The court finds, and the government agrees, that

Knight has sufficiently exhausted his administrative remedies.

III.    Extraordinary and Compelling Reason

There must be an extraordinary and compelling reason for the court

to modify Defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).[1]

Compassionate release is narrowly limited to those defendants who are

most in need, pursuant to USSG § 1B1.13.  That policy statement limits

"extraordinary and compelling reasons" to four categories: (1) the inmate's

medical condition; (2) the inmate's age; (3) the inmate's family

circumstances; and (4) other reasons "[a]s determined by the Director of

the Bureau of Prisons," which the BOP has set forth in Program Statement

---

[1] Although Defendant suggests that the court may order the BOP to transfer him to
another facility or home confinement, the court lacks the authority to dictate a prisoner's
place of confinement to the BOP.  *See United States v. Oliver*, No.17-20489, 2020 WL
2768852, at *2 (E.D. Mich. May 28, 2020) (citing *United States v. Jalili*, 925 F.2d 889,
893-94 (6th Cir. 1991)).  Rather, the court must determine whether to reduce
Defendant's sentence to time served.  *See id.*  In doing so, the court may order a term
of supervised release to be served in home confinement.

5050.50.  USSG § 1B1.13 cmt. n.1.

Knight contends that his medical condition and the conditions at FCI Elkton constitute extraordinary and compelling reasons justifying compassionate release.  Knight is 5'11" tall and weighs 315 pounds, with a body mass index of 43.9.  His obesity places him at a higher risk for complications should he contract COVID-19.[2]  He also expresses concern about being in proximity to his bunkmate, Ryan Nesby, who was hospitalized with COVID-19 on April 10, 2020, and died from complications on April 26, 2020.

The government notes that Knight and Nesby were last bunked together on February 27, 2020.  Although asymptomatic, Knight received a COVID-19 test on May 21, 2020, and tested negative.  Certainly, FCI Elkton has been hard hit by COVID-19, with over four hundred inmates testing positive as of June 8, 2020.  However, conditions at the facility appear to be improving, with an increase in testing and a decrease in COVID-19 hospitalizations.  Numerous preventative measures, including increased social distancing and cleaning, have been implemented by the

---

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#severe-obesity.  Knight also references childhood asthma, but his BOP medical records do not reveal any current treatment for asthma.

BOP.  *See* ECF No. 412-2 (Declaration of Sarah A. Dees).

Under the circumstances, the court is not persuaded that extraordinary and compelling reasons exist that would render Knight eligible for compassionate release.  *See United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (a "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission") (Goldsmith, J.); *accord United States v. Bridges*, No. 14-20007, 2020 WL 2553299, at *4 (E.D. Mich. May 20, 2020) (Cox, J.); *United States v. Alzand*, No. 18-20703, 2020 WL 2781824, at *3 (E.D. Mich. May 29, 2020) (Drain, J.).  *But see United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *5 (E.D. Mich. May 7, 2020) (defendant's chronic health conditions, including diabetes, heart disease, and asthma, coupled with prison conditions, constituted extraordinary and compelling reasons) (Levy, J.).

Further, § 1B1.13(2) only permits release if a defendant is "not a danger to the safety of any other person or to the community."  The record does not support such a finding here.  Although Defendant argues that he is a nonviolent offender, his drug trafficking and possession of an AK-47 as a convicted felon demonstrate the danger he poses to the community.  *See*

*generally United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (noting that the court "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence"). Additionally, Defendant has not been free of violations while in prison, as he was disciplined in December 2019 for possessing a cell phone. The court cannot be assured that Defendant will comply with the terms of supervised release or social distancing recommendations if he is unable to follow basic rules while in custody.

## IV.  Factors under 18 U.S.C. § 3553(a)

The § 3553(a) factors, including Defendant's history and characteristics, seriousness of the offense, promoting respect for the law, and providing just punishment weigh against his request for compassionate release. Knight's criminal conduct was undeniably serious, in that he played an integral role in a drug trafficking scheme over a period of years. Allowing Knight to be released after only serving about a third of his sentence would not promote respect for the law or proper deterrence, provide just punishment, and avoid unwarranted sentencing disparities. The court finds that Knight is not an appropriate candidate for the extraordinary remedy of compassionate release.

## CONCLUSION

IT IS HEREBY ORDERED that Knight's motion for compassionate release (ECF No. 409) is DENIED.

Dated:  June 9, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 9, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk

---